United States District Court
Southern District of Texas
**ENTERED**
August 09, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PLOTAGRAPH, INC, TROY PLOTA, and SASCHA CONNELLY, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-21-3873 |
| LIGHTRICKS, LTD., | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

A cell phone owner looking at an image of a waterfall on a cell phone or other electronic device screen is looking at digital pixels. Moving those pixels can animate the image. The static image of a waterfall can become a dynamic image of a flowing rush of water. All or part of an image can be made to move or held still. Animating images by manipulating the pixels on an electronic device is the subject of this patent infringement lawsuit.

Troy Plota and Sascha Connelly are the patentees of the "automated pixel shifting within a video file" system claimed in Patent No. 11,182,641 (the '641 Patent), and Patent No. 10,621,469 (the '469 Patent), and of the "automated pixel shifting within a digital image" system claimed in Patent No. 11,301,119 (the '119 Patent), Patent No. 10,346,017 (the '017 Patent), and Patent No. 10,558,342 (the '342 Patent). (Docket Entry No. 31 at ¶¶ 3–4, 22, 33, 46, 58, 69). The patents are owned by, or assigned to, Troy Plota, Sascha Connelly, and Plotagraph, Inc. The Plotagraph and Plotagraph Pro computer programs were originally sold in 2016. (*Id.* at ¶ 7). The Plotagraph App was available in the Apple App Store beginning in 2017. (*Id.*). The Plotagraph App was a swift success; in 2017, it was the number one app available for download in the Photo and Video

category. (*Id.* at ¶ 8). In 2018, Lightricks Ltd. began selling a similar app on the Apple App Store, first using the name "Pixaloop" and later "Motionleap." (*Id.* at ¶ 5).

Plotagraph, Plota, and Connelly, (together, Plotagraph), sued Lightricks, alleging that the Pixaloop and Motionleap Apps violated Plotagraph's patents supporting the Plotagraph App. (Docket Entry No. 31). Lightricks has moved to dismiss for failure to state a claim, based on the lack of patent eligibility for what it claims is an abstract idea. (Docket Entry No. 37). Plotagraph responded, and Lightricks replied. (Docket Entry Nos. 43, 46). The court heard arguments on the motion to dismiss and received supplemental briefs from the parties. (Docket Entry Nos. 49, 52, 53). Plotagraph requests another hearing to discuss the supplemental briefing, (Docket Entry No. 54), but the earlier hearing covered the issues and no additional hearing is needed. Based on the pleadings, the motion and responses, the arguments of counsel, and the applicable law, the court grants the motion to dismiss. The reasons are set out below.

I.      **Background**

Digitized photographic images and video files are made up of small pixels. The Plotagraph App and the related Plotagraph and Plotagraph Pro computer programs enable users to select certain pixels within a photograph or video file and have those pixels shifted and "rendered" in a loop, creating a dynamic image or video made up of the moving pixels. (Docket Entry No. 31 at ¶ 7). The core of the Plotagraph App was technology patented by the '017 Patent, the '342 Patent, the '469 Patent, the '641 Patent, and the '119 Patent. (*Id.* at ¶ 2). The '017 Patent, entitled "Automated Pixel Shifting Within a Digital Image," was issued in July 2019. (*Id.* at ¶ 46). The '342 Patent," entitled "Automated Pixel Shifting Within a Digital Image," was issued in February 2020. (*Id.* at ¶ 58). The '469 Patent," entitled "Automated Pixel Shifting Within a Video File," was issued in April 2020. (*Id.* at ¶ 69). The '641 Patent, entitled "Automated Pixel Shifting within

a Video File," was issued in November 2021.  (*Id.* at ¶ 22).  The '119 Patent, entitled "Automated Pixel Shifting within a Digital Image," was issued in April 2022. (*Id.* at ¶ 33).

The patents claim a system that:

> allow a user to select a set of pixels within the photo or video file which are then caused by the software to be shifted and rendered in a loop, simulating motion. A user can also keep portions of the still photo or video file from moving by using an "anchor" or "mask" tool to create a group of stationary pixels which the user does not want to move.

(*Id.* at ¶ 7).  The patents claim a system that assumes a computer.  The patented claims:

> are directed to particular tools or features which integrate the automatic shifting of pixels into a true practical application.  These features include the use of paths or digital links and starting and ending points to provide directions for automatic shifting, non-linear paths, masks which prevent shifting, and anchor points for creation of masks.

(*Id.* at ¶ 9).

Troy Plota and Sascha Connelly are the inventors and original owners of all five patents. (*Id.* at ¶¶ 3–4).  Plota has assigned to Plotagraph his 50% interest in the '017 Patent, the '342 Patent, and the '469 Patent.  (*Id.* at ¶ 3).  Plota still has a 50% interest in the '641 Patent and the '119 Patent.  (*Id.*).  Connelly owns 50% of all five patents.  (*Id.* at ¶ 4).

In September 2018, Lightricks began offering for sale in the United States its "Pixaloop" App.  (*Id.* at ¶ 5). Through the Pixaloop App, a user can select a set of pixels to be shifted to create the illusion of motion.  (*Id.* at ¶ 10).  The user can anchor pixels that he or she does not want to be moved.  (*Id.*).  In 2019, Lightricks changed the name to the "Motionleap" App, replacing the "anchor" tool with a brush-eraser tool allowing users to select which pixels to animate and which to hold stationary.  (*Id.* at ¶ 11).

Since 2018, Lightricks has sold its apps on the Apple App Store and the Google Play Store, in competition with Plotagraph's apps. (*Id.* at ¶ 12). The Lightricks Apps were downloaded 1.2 million times in October 2021. (*Id.* at ¶ 13). Plotagraph alleges that, by extrapolation, there have been 33,600,000 downloads of the Lightricks Apps. (*Id.*).

Plotagraph notified Lightricks in September 2018 that it believed Lightricks's Pixaloop App was covered by Plotagraph's then-pending '342 Patent. (*Id.* at ¶ 16). Plotagraph notified Lightricks of its alleged infringement of the '017, '342, and '469 Patents by filing this lawsuit in November 2021. (*Id.* at ¶ 17). In this lawsuit, Plotagraph also alleges that Lightricks made and published several YouTube tutorials to teach the Pixaloop App, and that the tutorials as well as the App infringe the Photagraph patents. The tutorials include "Working from home? Let's move things around!" published in June 2020 by Motionleap, and "How to Make Photos Move with Pixaloop!," published in September 2018 by Motionleap. (*Id.* at ¶ 15).

Lightricks asks this court to dismiss because the Plotagraph patents are invalid attempts to patent the abstract idea of animation in the context of computers, without improving how computers work. Plotagraph argues that the patent claims are directed to digital animation, which is not an abstract idea but rather a "particular manner of shifting pixels within a digital image," that represent a concrete improvement to how computers function. (Docket Entry No. 52 at 5, 9). Each argument is addressed below under the applicable legal standards.

## II.     The Legal Standards

### A.     A Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

B.       The *Alice* Two-Step Framework

The case law draws a line between a patentable invention of a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," 35 U.S.C. § 101, and an invention that is not patentable because it is an abstract idea. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (citation omitted). Patent protection does not apply to laws of nature, natural phenomena, and abstract ideas—"the basic tools of scientific and technological work"—because the "[m]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citations and internal quotation marks omitted). The case law is not clear, however, on precisely where to draw the line in a particular case.

> As the Supreme Court has cautioned:
>
> > At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. [A]pplication[s] of such concepts to a new and useful end, we have said, remain eligible for patent protection.
> >
> > Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id.* at 217 (internal quotation marks and citations omitted).

The Supreme Court has established a two-part framework for courts to use in determining patent eligibility. First, a court asks whether the claims are directed to laws of nature, natural

6

phenomena, or abstract ideas. *Id.* If so, the court asks what else makes up the claims, considering "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (citation and internal quotation marks omitted). Despite a recent request from the Department of Justice, the Supreme Court has declined to take up and clarify how this two-part framework works in application. *See Univ. Secure Registry LLC v. Apple, Inc.*, No. 21-1056, (U.S. May 16, 2022) (denying petition for a writ of *certiorari*).

Computers add to the complications. In cases involving computer-related patents, the critical issue is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). "[A] claim that merely describes an 'effect or result dissociated from any method by which [it] is accomplished' is not directed to patent-eligible subject matter." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) (citations omitted).

**III. Analysis**

As Lightricks points out, the independent claims in the allegedly infringed patents follow a three-part format: (1) a preamble identifying a computer system, computer program product, method, or computer-readable media, "for automating the shifting of pixels"; (2) a series of preparatory steps or features initiated by a user; and (3) a final pixel-shifting step. Lightricks diagrams these steps, as follows:



(Docket Entry No. 53 at 8; *see also* Docket Entry No. 31-2 at 21–23; Docket Entry No. 31-3 at 18–20; Docket Entry No. 31-4 at 18–20; Docket Entry No. 31-5 at 18–20; Docket Entry No. 21-6 at 21–22).

Plotagraph does not dispute this three-part characterization. Nor does Plotagraph argue that Claim 12 of the '641 Patent, used as the basis for the diagram, is not representative of the claims for the purpose of deciding whether the claims are directed at patent-eligible subject matter. Nor has Plotagraph pointed to specific claim terms that would have to be construed before the court can assess whether the claims for pixel shifting are directed to an abstract idea or whether they improve computer functioning.

Lightricks argues that "shifting pixels" is an abstract idea, amounting to no more than a digital extension of animating static images into moving images. The idea of showing a swift succession of changes in the position of component lines or points on a drawing to create the appearance of movement is an old idea. Extending that idea to showing changes in the position of pixels making up an electronic image is, Lightricks contends, also an abstract idea. *See Animation*,

CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/animation. Lightricks argues that because the claims "involve only routine activity for animating an image, namely: picking a starting point, a direction, and a portion of the image to move, and then moving that portion," the claims fail step one of *Alice*. (Docket Entry No. 37 at 11). Lightricks also argues that under step two of *Alice*, none of the claims contains an inventive concept to improve computer functioning, as needed for patent eligibility. The result, according to Lightricks, is that the asserted patent claims are not directed to patent-eligible subject matter.

Plotagraph responds that pixel shifting is not an abstract idea, but even if it was, the "claimed automatic shifting of pixels is an improvement in computer functionality because it addresses a computer-specific problem which has no counterpart in the 'brick and mortar' world." (Docket Entry No. 43 at 7). Plotagraph also argues that the presumption of validity applies, requiring Lightricks to prove that the claims are invalid by clear and convincing evidence. (Docket Entry No. 43 at 10). Although the burden is correctly identified, *see Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018) (citation omitted), the parties do not argue that there are factual disputes material to determining patent eligibility. The legal issue is whether this claimed invention, which directs users to choose a digital starting point and a direction to shift pixels, is patent eligible.[1]

Under step one of *Alice*, the court must determine whether "shifting pixels" is an abstract idea. Ideas that can be performed in the human mind or by using pen and paper tend to be abstract,

---

[1] Plotagraph argues that the claims include patent eligible subject matter because the patent office withdrew a section 101 rejection during prosecution of the patents after the claims were amended to include "automating" or "automatically" shifting pixels. (Docket Entry No. 43 at 9–10). "The Examiner's decision, on an original or reissue application, is never binding on a court." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985).

9

and the computer equivalents of these ideas are also abstract. Under step two of *Alice*, the court must determine whether "the elements of each claim both individually and as an ordered combination . . . transform the nature of the claim into a patent-eligible application." 573 U.S. at 217. "When claims . . . are 'directed to an abstract idea' and 'merely requir[e] generic computer implementation,' they 'do[ ] not move into section 101 eligibility territory.'" *Smart Sys. Innovations, LLC v. Chi. Transit Authority*, 873 F.3d 1364, 1374 (Fed. Cir. 2017).

In *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020), a patent holder sued for infringement of a patent that claimed "a method and system for limiting and controlling access to resources in a telecommunications system." The defendant's products "include[d] 'a security system that can grant apps access to a subset of services on the phone, with the end user controlling the permissions granted to each app.'" *Id.* at 1320. The Federal Circuit concluded that the method and system for receiving an access request and determining whether access should be granted were abstract ideas. *Id.* at 1326. The Federal Circuit reasoned that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Id.* at 1327 (citation omitted).

The plaintiff in *Ericsson* argued that because the claimed resource-access method was limited to mobile telephone systems, the method was not an abstract idea. The court rejected the argument, finding that that the limit to that system did not make the claimed method any less abstract. *Id.* Because the claims did not "recite an inventive concept sufficient to transform that idea into patent-eligible subject matter," failing step two, they were not patent eligible. *Id.* at 1331.

In *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044 (Fed. Cir. 2017), the patent involved maintaining a database of a seller's inventory, gathering financial information from a

consumer, and presenting financing options to the consumer for each item of available inventory. *Id.* at 1047. Using an approach similar to *Ericsson*, the Federal Circuit held that the claimed invention was an abstract idea, noting that the "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Id.* at 1055, 1057. The patent failed at *Alice* step two. The court concluded that the "use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server—do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea itself." *Id.* at 1056.

*Ericsson* and *Credit Acceptance* are examples of cases in which a claimed invention that relies on a computer to improve a mental, manual, or mechanical human process is abstract unless it claims a specific set of rules that improves computer functionality itself. *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), is another example. The issue in *McRO* was a method that used "multiple 3–D models of a character's face to depict various facial expressions made during speech." *Id.* at 1303. The claimed method related to a pre-existing animation method in which a 3-D image of the face of an animated character had "morph target" models made up of identified points that would make the character's face appear to be making a sound, referred to as a "phoneme." *Id.* at 1303. In the pre-existing method, animators had to set morph weights at certain key points with the help of the computer, using their judgment. *Id.* at 1305. The patentee argued that "the claimed process is technological because it provides 'a method for getting a computer to automatically generate video of a 3–D animated character speaking in sync with pre-recorded dialogue—without requiring an artist's constant intermediation.'" *Id.* at 1309–10. The Federal Circuit held that the claims were not directed at an abstract idea, because the patent claimed a "meaningful" set of rules to carry out an automated process of setting the

11

morph weights and the transitions between phonemes. *Id.* at 1313. In other words, "[i]t is the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process' by allowing the automation of further tasks." *Id.* at 1314.

The patent at issue in *Visual Memory LLC v. NVIDIA Corp.*, 867 F. 3d 1253 (Fed. Cir. 2017), also related to computer memory systems. Computers often use a tiered memory system. *Id.* at 1255. In the past, the memory systems had to be designed for, and tailored to, a specific type of computer processor. *Id.* The patent at issue overcame that deficiency by "creating a memory system with programmable operational characteristics that can be tailored for use with multiple different processors without the accompanying reduction in performance." *Id.* Although the patent relied on conventional computer components, it was not an abstract idea because the claims were "directed to an improvement in the functioning of a computer." *Id.* at 1262 (citation omitted).

Similarly, in *In Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018), the court concluded that a claim directed to "a specific method for navigating through three-dimensional electronic spreadsheets" was not directed at an abstract idea because it was an improvement that allowed "computers, for the first time, to provide rapid access to and processing of information in different spreadsheets, as well as easy navigation in three-dimensional spreadsheets." *Id.* at 1007–08. Importantly, the claimed method recited more than just "the idea of navigating through spreadsheet pages using buttons or a generic method of labeling and organizing spreadsheets." *Id.* at 1008–09. The court held that a different claim, which "merely recite[d] partitioning cells to be presented as a spreadsheet, referencing in one cell of a page a formula referencing a second page, and saving the pages such that they appear as being stored as one file," was directed at the abstract idea of "identifying and storing electronic spreadsheet pages"

and offered no improvement in computer functioning. That claim was not patent eligible under § 101. *Id.* at 1012–13.

Contrary to *McRo*, *Visual Memory*, and *Data Engines Tech.*, in *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022), the Federal Circuit affirmed a district court's dismissal of an infringement claim on the basis that the claimed improvement in digital cameras was "directed to 'the abstract idea of taking two pictures and using those pictures to enhance each other in some way,'" and was not patentable. *Id.* at 1042. *See also In re Sturgeon*, 839 Fed. Appx. 517 (Fed. Cir. Jan. 12, 2021) (a claimed method of creating a floral arrangement on an electronic screen was not a patentable subject matter because "creating a floral arrangement using a computer" was an abstract idea and selecting an image from a library and displaying it on the screen required only generic computer processes); *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017) (the process of creating a facial image composite by encoding was directed at the abstract idea of "encoding and decoding image data," and the specific algorithm that enabled the encoding process did not add sufficient inventive process to make the abstract idea patentable); *MyMail Ltd. v. OoVoo, LLC*, Case No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) (a claimed process for automatically updating an internet toolbar over a network without user intervention was directed at a patent-ineligible concept because it used a computer to collect, analyze, and present information, which did not improve existing computer functionality).

Under this case law, a claim for a process or method to perform a task that can be done in the human mind, or by a human using a pen and paper, is a claim directed to an abstract idea. Using a computer for the process or method does not make the claim less abstract. Such a claim may be patentable if it sets out and incorporates specific rules to carry out the claimed automated process or method that improves how computers function. If the claim simply uses existing

13

computer functions to perform a process or method, then the claim is still directed at an abstract idea. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (alteration in original) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" (quoting *Alice*, 573 U.S. at 225)).

Shifting pixels to create the illusion of movement within an image is a digital version of animation, which is an abstract idea. The process of animation has been done by humans using paper and pencil for at least the last century. Plotagraph's complaint refers to animation to describe what the patents at issue allow the user to accomplish. The complaint alleges that the "Patents-in-Suit relate to novel computer systems and methods for automatically shifting pixels in still digital photos or video files," and that this "technology allows a user to animate portions of a digital still photo or a fame of a video file." (Docket Entry No. 31 at ¶ 6). The claims for automatically shifting pixels is similar to the claims in *Ericsson* for a digital security system for deciding when and whether to grant mobile applications access to other services on a cell phone. Although the process of granting access in *Ericsson* was performed by a computer, and although the access granted was itself electronic and automatic, the claim was for an abstract idea that the human mind could perform, and the process for using the computer relied on existing functions and did not improve them.

The process of shifting pixels to animate static images claimed in the Plotagraph patents takes place within a computer, but it is a process that can be performed by the human mind, or, historically, by a human using pen and paper. Moving pixels around to create an illusion of movement is an abstract idea that is not transformed into a nonabstract idea merely because it takes

place in the digital space. In *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022), the Federal Circuit rejected a claimed invention that was "directed to 'the abstract idea of taking two pictures and using those pictures to enhance each other in some way,'" despite the fact that the invention added a feature to digital cameras. As the Federal Circuit noted, "[c]onventional computer equipment can be 'vital' to an advance that is still abstract, but not suffice to avoid ineligibility." *Id.* at 1045. The independent claims in the Plotagraph patents all state that the claims are directed to automating a shifting of pixels, then identify four steps, each initiated by a user: to select a starting point; to select the direction of movement from that point; to create a link from the starting point; and to select the size of the set of pixels along the link. The claims are directed to the abstract idea of moving pixels to animate an image and use existing computer tools to achieve that result. Under step 1 of *Alice*, moving pixels to animate an image is an abstract idea. The facts that the process of moving pixels is done on the computer, and that the term "automating" is included in the claim language, does not make the process less abstract under *Alice* step one.

      The Plotagraph patents fail at *Alice* step one because they are directed at the abstract idea of shifting pixels to create the illusion of movement within an image. The Plotagraph patents also fail at *Alice* step two because the elements of each claim in the Plotagraph patents, considered individually and in combination, do not show the required improvement of computer functioning, but rather the use of existing and generic computer tools—"a computer system," with "processors," "computer-readable media," and a "user interface." (*See* Docket Entry No. 31-2 at 22 ("A computer program comprising one or more non-transitory computer storage media having stored thereon computer executable instructions that, when transmitted to a remote computer system for execution at a processor, cause the remote computer system to perform a method for automating a

15

shifting of pixels within an image file, the method comprising: receiving a first indication of a first starting point through a user interface . . . .")).

The claimed language calls for the user to initiate the steps to achieve the result by shifting certain pixels using existing and generic computer tools. The steps in the Plotograph patents do not add sufficiently inventive steps that improve computer functionality. Under *McRO*, *Visual Memory*, and *Data Engine Techs.,* in order to transform an otherwise abstract idea claimed in a patented process or method for use on a computer, the claimed process or method must improve the computer functionality through meaningful and specific rules, methods, or processes. Shifting pixels using existing computer capabilities is not an improvement in computer functionality. The steps set out in each of the independent claims in the Plotagraph patents are not like the in-depth extensive set of rules in *McRO* that enabled computers to automate phenomes in 3-D animation models, eliminating the previous need for human-intermediated judgment and steps. *See McRO*, 837 F.3d at 1313 (a court "look[s] to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."); *see also Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (claims directed to an improvement in the functioning of computers with small screens were patent eligible). There are no detailed rules similar to *McRo* in the Plotagraph patents. Instead, the claims describe general user-initiated steps, beginning with selecting a particular pixel to be a starting point, then picking a direction and length for the digital link that the user will create, and then picking the set of pixels along that link. (Docket Entry No. 52 at 6). Nor are the claimed processes for shifting pixels like the claimed invention in *Visual Memory*, 867 F.3d at 1255, which created a

new computer memory system for use with multiple processors. Such a memory system could not have been implemented with preexisting computer technology.

The claims for shifting pixels at issue here are more like the claims the Federal Circuit found unpatentable in *Data Engine Techs.*, 906 F.3d at 1012–13. The unpatentable claim was directed at the abstract idea of identifying and storing electronic spreadsheet pages, and "merely recite[d] partitioning cells to be presented as a spreadsheet, referencing in one cell of a page a formula referencing a second page, and saving the pages such that they appear as being stored as one file." This claim was not patent eligible under § 101. *Id.* at 1012–13. The *Data Engine Techs* claim is similar to the Plotagraph patent claims for shifting pixels to animate a static image on a computer: an abstract idea achieved by user-initiated steps through existing computer technology to pick the pixels to be moved and the direction and speed of movement.

Although Plotagraph alleges that the automatic shifting of pixels and associated features "were not previously used with image editing, were not generic computer software or hardware, and were not well-understood, routine, or conventional in the art at the time of invention," (Docket Entry No. 31 at ¶ 9), the court need not accept conclusory allegations if the complaint and record do not otherwise support that conclusion. What is claimed in the patents, and described throughout the complaint, are digital environments in which a user chooses a starting point, the direction, and the size of the pixel group to be moved along that direction. "Simply appending conventional steps, specified at a high level of generality, to a method already well known in the art is not enough to supply the inventive concept . . . [T]he introduction of a computer into the claims does not alter the analysis." *Alice*, 573 U.S. at 209.

The asserted claims of the '017, '342, '469, '641, and '119 Patents are directed to an abstract idea, provide no inventive concept, and are ineligible under § 101. No claim for patent infringement can be asserted.

**IV.    Conclusion**

Lightricks's motion to dismiss Plotagraph's first amended complaint, (Docket Entry No. 37), is granted. Lightricks's motion to dismiss Plotagraph's original complaint, (Docket Entry No. 30), is moot. Because Plotagraph already had an opportunity to amend, and because further amendment would be futile, Plotagraph's claims are dismissed with prejudice. Plotagraph's motion for leave to file second supplemental disclosures, (Docket Entry No. 42), is moot. A dismissal order is separately entered.

SIGNED on August 9, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge